IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EMILY HOLMES, | ) | Case No. 1:17-cv-01648 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.     Introduction

An administrate law judge denied Plaintiff, Emily Holmes',[1] application for disability insurance benefits ("DIB") alleging disability beginning on October 15, 2014, under Title II of the Social Security Act.  (Tr. 18)  The ALJ found that Holmes was not disabled because she could perform a significant number of jobs in the economy despite her impairments.  (Tr. 31-32)  Holmes' DIB claim was denied initially on January 25, 2016 (Tr. 116) and upon reconsideration on June 2, 2016.  (Tr. 126)  The Appeals Council denied Holmes' request for review on June 3, 2017, leaving the ALJ's decision as the final decision of the Social Security Commissioner.  *See* 20 C.F.R. § 416.1481; Tr. 1-3.

Holmes seeks review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).  Because the ALJ did not err in finding that plaintiff's mental impairment

---

[1] The medical records refer to the plaintiff as Emily Allen, Emily M. Anselmo, or Emily Holmes. Plaintiff shall be referred to as Emily Holmes in this decision, because this is how the plaintiff identified herself in her complaint (ECF Doc. 1-1).

did not satisfy the criteria of Listing 12.04, I recommend that the final decision of the Commissioner be AFFIRMED, pursuant to 42 U.S.C. §405(g).

## II. Evidence

Holmes alleged disability based on both physical and mental impairments, including bipolar disorder, PTSD, anxiety, migraines, and hip, back, and knee pain. (Tr. 25) Holmes now raises only one issue, whether the ALJ erred in his analysis of Listing 12.04. *See* ECF Doc. 13, Page ID# 739. Because Holmes raises only limited issues, it is unnecessary to summarize the entire record.

### A. Relevant Personal, Educational, and Vocational Evidence

Holmes was 35 years old on the date of the hearing. (Tr. 46) Holmes completed some college over the course of about ten years. (Tr. 48) On the date of the hearing, Holmes was working as an insurance clerk for a State Farm insurance agent. (Tr. 50) Holmes had worked full time for multiple insurance agencies prior to and after the alleged onset date, although those employments could be considered limited-duration, unsuccessful work attempts. (Tr. 313) Plaintiff had also worked at Check and Balances, Macy's Holdings Inc., and C Estes for Insurance after her alleged October 15, 2014 disability onset date. (Tr. 299, 302-05) Her past work experience included work as an insurance clerk, analyst, and customer service representative. (Tr. 52-54, 72)

### B. Medical Evidence

On July 23, 2011, prior to the alleged October 15, 2014 onset date, Holmes was hospitalized for attempting suicide. (Tr. 363) This appeared to have been triggered by a fight Holmes had with her boyfriend. (Tr. 364) Holmes was diagnosed with bipolar II disorder. (Tr.

369)  Holmes received treatment from Byong J. Ahn, M.D. eighteen times between June 2011 and August 2014.  (Tr. 446-66)

Holmes received outpatient mental health care at Charak Center for Health and Wellness from December 2, 2014 to May 27, 2016.  (Tr. 420-45, 560-616)  At each appointment, Holmes was noted to be well groomed and cooperative, with clear and normal speech and average eye contact and motor activity.  (Tr. 421, 426, 431, 436, 442)  Holmes was prescribed continued Zoloft, Zonegran, Cogentin, Ativan, and Seroquel.  (Tr. 433, 428, 438, 444)

On December 2, 2014, Holmes reported that she had last seen a mental health provider in July, 2014.  (Tr. 440)  She reported having been fired from three jobs due to concentration issues, suicidal thoughts, and attempts at self-mutilation.  (*Id.*)  She reported she had tried and failed several medications, including Abilify, which caused increased anger and anxiety.  (*Id.*)  She reported depression, chronic suicidal thoughts, mood swings, irritability, anxiety, difficulty sleeping, and unusual thoughts.  (*Id.*)  Holmes' symptoms included moderate to severe depressive symptoms, mood swings, anxiety, irritability, racing thoughts, insomnia, and decreased energy, concentration, and interests.  (*Id.*)  The service provider found Holmes' condition was deteriorating.  (Tr. 444)

On December 16, 2014, Holmes reported improvement in her depression, anxiety, mood swings, and irritability and that she was doing "okay."  (Tr. 435)  She reported feeling less stress because she hadn't been working.  (*Id.*)  She reported feeling detached from herself and having an imaginary conversation with her friend.  (*Id.*)  Holmes' symptoms were mild to moderate, her mood was depressed and anxious, and her perception displayed depersonalization.  (Tr. 437)  Holmes' attention, memory, and concentration were impaired, her insight was poor, and her judgment was fair.  (*Id.*)  Holmes showed improvement since her last visit.  (Tr. 439)

On January 13, 2015, Holmes reported that her depression, mood swings, and anxiety were all well controlled, but she was still mildly irritable.  (Tr. 430)  Holmes reported that she really did not enjoy her job at her insurance agency.  (*Id.*)  Holmes's only had mild symptoms, including racing thoughts, mood swings, decreased interests, and depressive symptoms.  (*Id.*)  Dr. Ranjan found Holmes was improving and assigned her a GAF score of 65.  (Tr. 433)  Dr. Ranjan referred Holmes to individual therapy.  (Tr. 434)

On February 3, 2015, Holmes reported that she was doing "better" and her moods were more stable.  (Tr. 425)  She reported Seroquel helped decrease her racing thoughts.  (*Id.*)  She stated she did not enjoy working as an insurance agent and had difficulty finishing projects.  (*Id.*)  Holmes' symptoms were mild or nonexistent.  (*Id.*)  Dr. Rakesh Ranjan noted that Holmes showed improvement since her last visit.  (Tr. 429)

On February 24, 2015, Holmes reported that she joined a bipolar support group.  (Tr. 420)  She also reported an abusive ex-boyfriend messaged her on Facebook, which made her feel more restless, gave her nightmares, made her have a "break-down," made her spend time crying at work, and affected her work.  (*Id.*)  Holmes also reported numerous environmental stressors, including job stress, feeling overwhelmed, and her seven-year-old daughter.  (Tr. 420-21)  She reported she started drinking to "self-medicate," and the medical service provider warned Holmes of potential harmful effects from taking Ativan while drinking.  (Tr. 420)  Holmes' symptoms were found to be mild or moderate, but not severe.  (*Id.*)  Holmes did not report any side effects from her medications.  (Tr. 423)

On February 27, 2015, Holmes was brought to Lutheran Hospital after she confessed her suicide plan to bipolar support group meeting peers, who called 911.  (Tr. 373-74)  Holmes reported that she felt increasingly anxious, depressed, hopeless, and helpless, had racing thoughts, and developed a plan to overdose on prescription medications after she was contacted

on Valentine's Day by an abusive ex-partner.  (*Id.*)  Holmes was diagnosed with mood disorders, bipolar disorders, and PTSD and given a GAF score of 35.  (*Id.*)  She was prescribed Zoloft, Seroquel, and Zonegran.  (Tr. 374)  Holmes reported having a depressed mood, sleep disturbance, guilt, crying spells, hopelessness with suicidal ideation, and decreased energy, concentration, appetite, and interests.  (*Id.*)  She was discharged on March 4, 2015 and reported decreased depression and anxiety.  (Tr. 394, 396)  The service provider assigned her a GAF score of 57, prescribed continued acetaminophen, Zonegran, Seroquel, and Zoloft and discontinued Ativan.  (Tr. 395)

On July 8, 2015, Holmes reported that she was doing well overall on her current medications.  (Tr. 415)  She had missed her last appointment, ran out of medication for three days, felt manic, and cut her hair into a Mohawk.  (*Id.*)  Holmes reported mild depressive symptoms, mood swings, anxiety, impaired concentration, and racing thoughts, and moderate irritability.  (*Id.*)  She had recently moved.  (Tr. 416)  She was well groomed and cooperative, with clear and normal speech and average eye contact and motor activity.  (*Id.*)  Holmes' memory was normal, insight was poor, judgment was fair, affect was constricted, and her mood was depressed and irritable.  (Tr. 417)  She perceived illusions and her thought process was tangential.  (*Id.*)  She did not report any side effects from her medications.  (Tr. 418)  She was prescribed continued Zoloft, Ativan, Seroquel, Trazodone, and increased Lamictal.  (*Id.*)

On September 8, 2015, Holmes reported that her medication dosages had been decreased in August, 2015 because she had not taken her medications for about four days.  (Tr. 611)  She stated her medications were ineffective in managing her symptoms at the prescribed doses.  (*Id.*)  Holmes reported irritability, mood swings, elevated anxiety, panic attacks, increased appetite, difficulty sleeping, low energy, feeling overwhelmed, depression, a desire for isolation, and frequent thoughts of suicide.  (*Id.*)  She reported that she had not been driving much due to

5

having difficulty concentrating and focusing.  (*Id.*)  Holmes stated that she did not receive

counselling because she could not afford it.  (*Id.*)  The service provider found Holmes' anxiety

was severe and her other symptoms were moderate.  (Tr. 612)  Holmes reported financial issues

related to being unemployed and having difficulty keeping a job due to not concentrating,

fighting, crying in front of customers, and cutting herself.  (*Id.*)  Her toxicology screen was

positive for Benzodiazepines.  (Tr. 615)  The service provider continued Lamictal and Activan,

changed the dosage of Holmes' Zoloft, Seroquel, and Trazodone prescriptions, and referred

Holmes to individual therapy.  (Tr. 615-16)  The medical service provider found Holmes'

condition was stable and assigned her a GAF score of 55.  (Tr. 616)

On October 6, 2015, Holmes reported that her symptoms had decreased since her last

visit, but she still felt "blasé, tired, and irritable," with mood swings, anxiety, and lack of interest

and motivation.  (Tr. 606)  She also reported auditory and olfactory hallucinations.  (Tr. 608)

Holmes' symptoms were mild to moderate.  (Tr. 606)  Holmes reported having impaired short

term memory, difficulty concentrating and focusing, poor impulse control, and "out of body

experiences."  (Tr. 608)  She was prescribed continued Lamictal, Zoloft, Seroquel, Trazodone,

and an increased dosage of Ativan.  (Tr. 609)

On November 5, 2015, Holmes reported she stopped taking Seroquel because she did not

like the way it made her feel and because she was experiencing increased symptoms, including

auditory, gustatory, and olfactory hallucinations.  (Tr. 601)  Holmes reported having stress from

starting a new job and having a busy life at home.  (*Id.*)  Pamela D. Pardon, PMHNP-BC RN

MSN found Holmes' symptoms were severe.  (*Id.*)  Nurse Pardon prescribed Holmes continued

Lamictal, Zoloft, Trazodone, Ativan, and Risperdal, and discontinued Seroquel because Holmes

stated the medication made her feel "foggy headed" and made her gain weight.  (Tr. 604)

On November 6, 2015, Holmes went to the Nord Center to seek counselling and pharmaceutical services, because she felt her prior provider raised its rates and was "really rude." (Tr. 476)  She stated that her relationship with her husband was "pretty good" and that they were good at communicating.  (*Id.*)  She reported that she used to love to read, but it was hard for her to concentrate.  (Tr. 477)  She also stated that she went to a writer's group once a month.  (*Id.*)  Holmes reported that she stopped taking Abilify because it was too expensive and she "tapered off" of Seroquel because it gave her a lot of side effects.  (Tr. 479)  Holmes reported past physical, domestic, and sexual abuse.  (Tr. 481)  Holmes reported that her depressed mood and anxiety were intensified by stressors related to blending families with her husband and parenting her daughter.  (Tr. 484)  Holmes was diagnosed with bipolar II disorder and severe depression with anxious distress.  (Tr. 485)  Esther Miller, LSW recommended counseling, a medical evaluation, and outpatient care.  (*Id.*)

On December 4, 2015, Holmes reported migraines and body aches that she attributed to being depressed.  (Tr. 595)  She reported feeling stressed at her job as a receptionist, due to the negativity and the anxiousness she experienced when interacting with people.  (*Id.*)  The medical service provider recommended counselling, but Holmes said she lacked insurance and could not afford it.  (*Id.*)  Holmes reported severe depressive symptoms, mood swings, anxiety, irritability, racing thoughts, sleep disturbance, and decreased energy, concentration, and interests.  (*Id.*)  She claimed to have self-mutilated by cutting herself with a knife, but she refused to show the injury to the service provider.  (Tr. 596)  Holmes had impaired attention, concentration, and memory. (Tr. 598)  She was prescribed continued Lamictal, Zoloft, Trazodone, and Ativan, and Risperdal was discontinued.  (Tr. 598-99)  The service provider found Holmes' condition was stable and assigned her a GAF score of 55.  (Tr. 599)

On January 4, 2016, Holmes reported having fought with her husband and been depressed over the holidays.  (Tr. 589)  She asked for a referral for counseling services at Nord Center.  (*Id.*)  Holmes' reported symptoms were severe.  (Tr. 590)  She was prescribed continued Lamictal, Zoloft, and Ativan, and Rexuli and Risperdal were added.  (Tr. 592)  The service provider noted that Risperdal had been discontinued because Holmes had started taking half the dose of Risperdal because she claimed it caused her panic attacks and auditory and visual hallucinations.  (Tr. 593)  The service provider recommended Abilify, but Holmes said she could not afford it.  (*Id.*)  The service provider found Holmes' condition was stable and assigned her a GAF score of 55.  (Tr. 593)

On January 13, 2016, Holmes had an initial counseling session at The Nord Center and reported financial problems, a lack of resources to obtain medications, and decreased motivation. (Tr. 512)

On January 29, 2016, Holmes was admitted to the Mercy Regional Medical Center for increased depression, suicidal ideation, and attempted overdose on Klonopin and Trazodone. (Tr. 532)  Holmes reported that she became suicidal after she was denied disability benefits because she did not want to stay in the marriage with her husband.  (*Id.*)  She reported that she had to do all the work at home and she was stressed because of taking care of her kids.  (*Id.*) Mahboob Ahmed, M.D. diagnosed Holmes with major depressive disorder, recurrent, with questionable psychosis, rule out malingering, and rule out bipolar disorder.  (Tr. 533)  He prescribed Wellbutrin and Klonopin, and discontinued Ativan, Zoloft, and Lamictal.  (*Id.*) Holmes was discharged on February 3, 2016.  (Tr. 521)

On February 5, 2016, Holmes reported that although she was admitted to the psych unit at Mercy Regional Medical Center for a suicide attempt, she had not attempted suicide, but did injure herself by cutting her arm with a knife and taking twice the prescribed dose of Ativan.

(Tr. 585)  Holmes stated that she felt better on the new medications she received at the hospital. (*Id.*)  Holmes' depressive symptoms and anxiety were severe and her other symptoms were moderate.  (*Id.*)  Holmes reported that she asked her spouse for a divorce.  (*Id.*)

On March 4, 2016, Holmes reported Risperdal was effective in eliminating the voice and paranoia she was experiencing.  (Tr. 581)  Holmes complained of severe depression and anxiety related to life stressors, including her financial problems, pending divorce from her spouse, and job stress.  (*Id.*)  She reported that she missed work a lot due to her depression and was disorganized and unfocused at work.  (*Id.*)  Nurse Pardon noted Holmes had severe depressive symptoms and anxiety, but her other symptoms were moderate.  (*Id.*)  Holmes reported having stress and poor work performance issues at her job.  (Tr. 581-82)  Holmes had impaired attention, concentration, and memory.  (Tr. 582)  Nurse Pardon prescribed Holmes clonazepam, bupropion, risperidone, lamotrigine, and trazodone.  (Tr. 583-584)

On April 12, 2016, Holmes reported severe depression, anxiety with lack of energy, lack of motivation, and difficulty sleeping.  (Tr. 576)  She reported that she felt her medications were not effective in controlling her symptoms of depression and anxiety.  (*Id.*)  She reported no side effects.  (*Id.*)  She reported imagining things cutting herself.  (*Id.*)  She also reported moderate to severe symptoms with difficulty sleeping, erratic appetite, difficulty concentrating, and short term memory loss.  (Tr. 577)  Holmes reported that she had recently filed for divorce from her husband of two years and was waiting for the divorce to go through.  (*Id.*)  She complained of being tired all the time and struggling to go to work.  (*Id.*)  Nurse Pardon found Holmes had impaired attention, concentration, and memory.  (Tr. 578)  Nurse Pardon noted that Holmes' strengths were that she was motivated, had a good support system, was educated, had financial resources, and had good insight.  (*Id.*)  Nurse Pardon prescribed Holmes clonazepam, fluoxetine, aripiprazole, zolpidem, risperidone, and lamotrigine, and added Prozac, Abilify, and Ambien.

(Tr. 579)  Nurse Pardon discontinued Trazodone, because Holmes stated it made her gain weight.  (*Id.*)  Holmes stated that the medication had been ineffective in managing her symptoms of depression and anxiety.  (Tr. 580)

On May 13, 2016, Holmes reported that she was feeling better since her last visit, had energy, and was able to "get things done."  (Tr. 570)  She reported she was only able to sleep for four hours a night.  (*Id.*)  Holmes reported she stopped taking Trazodone because she felt she was gaining weight on the medication, and then thought she went manic and crashed, resulting in severe depression for the three days before her appointment.  (*Id.*)  She reported experiencing nausea as the only side effect.  (*Id.*)  Nurse Pardon found Holmes depressive symptoms and anxiety were severe and her other symptoms were moderate.  (*Id.*)  She prescribed Holmes Klonopin and Latuda, in addition to clonazepam, aripiprazole, fluoxetine, and trazodone, and discontinued Ambien.  (Tr. 570, 573)  Holmes reported that she thought about hurting herself "quite a lot" and had considered a plan to overdose on pills.  (Tr. 570)  Holmes reported that her divorce from her husband was finalized on May 2, 2016.  (Tr. 571)  Holmes reported that she was waiting on disability.  (*Id.*)  Holmes reported problems with concentration, attention, and short term memory.  (Tr. 572)  Nurse Pardon noted that Holmes' strengths were that she was motivated, had a good support system, was educated, had financial resources, and had good insight.  (*Id.*)

On May 27, 2016, Holmes reported that her depression, manic episodes, and hallucinations were largely managed with her medication.  (Tr. 563, 568)  She reported concerns with anxiety and difficulty with anger management and mood swings.  (*Id.*)  The service provider opined that Holmes was not severely mentally disabled.  (*Id.*)  Holmes also reported improvement in her mood, anxiety, and ability to sleep with her medications.  (Tr. 564)  She reported that her moods were "stable," but that she continued to have problems with poor

concentration, short term memory, tiredness, and low energy.  (*Id.*)  She reported she had not injured herself since the end of January 2016.  (Tr. 565)  Nurse Pardon found Holmes' symptoms were mild to moderate.  (*Id.*)  She prescribed aripiprazole, clonazepam, fluoxetine, Trazodone, and lurasidone, and discontinued Prozac and prescribed no Klonopin.  (Tr. 565-67)

On July 18, 2016, Upender Geholt, M.D. noted that Holmes had been discharged from Bellevue Hospital ICU after reportedly overdosing on Klonopin, Bentropine, and Benadryl.  (Tr. 666)  Holmes reported that she planned to kill herself because of problems with her family.  (*Id.*)  Dr. Geholt opined she probably attempted suicide after a conflict with her family.  (*Id.*)  Dr. Geholt opined Holmes had moderate to severe mixed mood symptoms and assigned her a GAF score of 30.  (Tr. 666, 668)  He diagnosed her with bipolar disorder Type I, MRE, and mixed PTSD.  (Tr. 668)  Holmes reported she had not taken any of her medications since she was discharged from Bellevue Hospital.  (Tr. 669)

That same day, Dr. Geholt obtained emergency hospitalization for Holmes and she was admitted involuntarily to Firelands Regional medical Center.  (Tr. 635)  During her assessment, Holmes presented very irritable, crying, sad, and overwhelmed.  (*Id.*)  She had coping difficulty, she did not have any family member or friend to support her, and she had suicidal thoughts and mood swings.  (*Id.*)  Holmes underwent psychotherapy, individual therapy, milieu therapy, group therapy, and counselling to increase her coping skill and her medication was adjusted.  (Tr. 636)  Holmes started improving and she described her mood as much better and stable.  (*Id.*)  She was discharged on July 21, 2016.  (Tr. 635)

On July 27 and 29, 2016, Holmes reported no active suicidal ideation, intent, or plan.  (Tr. 656, 661)  She reported she was sleeping better with Seroquel.  (Tr. 656)  She reported mild improvement with her mood and reduced akathisia, but that she was still depressed, anxious, and

felt helpless and worthless. (Tr. 656, 661) Dr. Geholt continued Latuda, Lamictal, Artane, adjusted Seroquel, discontinued Ativan, and started Holmes on Klonopin. (Tr. 659)

On August 9, 2016, Holmes reported that she was doing better and that "Seroquel ha[d] helped a lot." (Tr. 652) She reported her mood had improved and she felt more even, less down, and less irritable. (*Id.*) She reported no suicidal ideation. (*Id.*) She reported she had returned to work, had improved energy and motivation, was no longer isolating herself, and improved self-esteem. (*Id.*) She was less anxious overall and did not feel hopeless or helpless. (*Id.*) Her PTSD symptoms were mild. (*Id.*) Dr. Geholt assigned Holmes a GAF score of 64. (Tr. 654)

On August 23, 2016, Holmes reported stress due to court issues related to the custody of her daughter. (Tr. 647) She reported she had been let go from her job and was worried about financial issues. (*Id.*) She reported she felt down and had mild feelings of worthlessness, but was not having passive or active suicidal ideation. (*Id.*) She denied ongoing racing thoughts or distractibility. (*Id.*) Dr. Geholt noted Holmes had good compliance with her medications. (*Id.*) He assigned her a GAF score of 60 and continued her medications. (Tr. 649-50)

### C.  Opinion Evidence

#### 1.  Paul Tangeman, Ph.D. and Cynthia Waggoner, Psy.D. – State Agency Psychologists

On January 25, 2016, state agency psychologist Paul Tangeman, Ph.D. conducted a psychiatric review technique assessment and found Holmes did not meet the B or C criteria of Listing 12.04. (Tr. 84-85) He found Holmes was only partially credible, in part, because she claimed to have problems with her memory and concentration, but the objective evidence in her file showed she had normal intelligence and no cognitive impairment. (Tr. 86) Dr. Tangeman also assessed Holmes' mental RFC. (Tr. 86) He opined Holmes was not limited or not significantly limited in her abilities to remember locations and work-like procedures, to

understand and to remember instructions.  (Tr. 86)  He opined Holmes was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace, but was either not limited or not significantly limited in her other abilities related to sustained concentration and presence. (Tr. 87)  Dr. Tangeman opined Holmes was moderately limited in her abilities to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, or get along with coworkers or peers without distracting them or exhibiting behavioral extremes, but was not significantly limited in her abilities to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  (Tr. 87)  Dr. Tangeman opined there was no evidence of Holmes having adaptation limitations other than her moderately limited ability to respond appropriately to changes in the workplace.  (Tr. 88)  Dr. Tangeman opined that Holmes could complete simple and complex tasks in a static work environment in which changes are infrequent, the work pace is not fast, and when there were no strict time or production quotas.  (Tr. 88)

On April 27, 204, state agency psychologist, Cynthia Waggoner, Psy.D. reached the same opinions as Dr. Tangeman regarding Holmes' mental RFC.  (Tr. 102, 104-106)

### 2.    Pamela D. Pardon, PMHNP-BC RN MSN – Treating Source

On February 5, 2016 nurse practitioner Pamela D. Pardon opined that Holmes had poor short term memory which affected her ability to follow directions, focus, and be productive.  (Tr. 546)  She opined Holmes had concentration issues, including problems focusing, staying on task, and completing projects.  (*Id.*)  She opined Holmes was unable to sustain attention, especially during manic episodes.  (*Id.*)  She opined Holmes was easily distracted, irritable, and anxious when in social and public situations, such as being in a work setting or store.  She noted Holmes had adapted by working very few hours per week and by avoiding going out.  (*Id.*)  Nurse Pardon

13

opined that Holmes would not be able to handle pressures "at work or elsewhere" and may have mental breakdowns or resort to self-injury or increased suicidal thoughts or the intent to harm herself. (*Id.*)

Nurse Pardon opined that Holmes was estranged from her family and that her social anxiety caused her to have a lack of friends. (Tr. 548) She opined that Holmes was unable to interact appropriately with former employers, supervisors, and co-workers, due to pressures at work, including constructive criticism. (*Id.*) She stated that Holmes had been fired six times in 2014 because of poor concentration and focus, inattention to detail, mood, irritability, and crying spells. (*Id.*) Nurse Pardon opined that the following might prevent Holmes from completing work activities in a usual work day or work week: inability to focus; sensitivity to pressure and some work demands; poor coping skills; and instability. (*Id.*)

Nurse Pardon opined that Holmes was scattered and disorganized when performing household chores, had difficulty shopping, driving, and "bills" due to decreased concentration and memory. (Tr. 549) She opined that Holmes had anxiety when driving and taking public transportation. (*Id.*) She opined that Holmes had difficulty shopping because she avoids going out public/social stations. (*Id.*) She noted that Holmes kept her monthly appointments, received medication, and had recently started seeking counselling services. (*Id.*)

### D.     Hearing Testimony and Function Report

#### 1.     Claimant's Hearing Testimony

During the December 21, 2016 ALJ hearing, Holmes' counsel argued that Holmes met the A and C criteria of Listing 12.04. (Tr. 44) Counsel further argued Holmes met the A criteria of Listing 12.04 because she experienced sleep disturbances, difficulty with concentration, thoughts of suicide, lack of energy, and a feeling of hopelessness. (*Id.*) Holmes' counsel

contended she met the C criteria of Listing 12.04 because there was a pattern of her symptoms significantly interfering with and causing a deterioration of her job performance. (*Id.*)

Holmes got divorced in May, 2016 after two years of marriage. (Tr. 46) She stated that her mood swings and her bipolar disorder ruined her marriage. (Tr. 69-70) She had been dating someone for seven months at the time of the administrative hearing. (Tr. 46) Holmes stated that she would see her boyfriend about once a week and they would stay home and watch TV and sometimes make dinner. (Tr. 62-63) Holmes stated she lived alone with her nine-year-old daughter. (Tr. 46) Holmes testified she saw her mother at least once a week and her father twice a year. (Tr. 65-66) Holmes stated that she did not visit with her family on Thanksgiving and had no plans to do anything in the upcoming holidays, although she would probably see her mother after Christmas. (*Id.*) Holmes supported herself through financial assistance from her family and by working part time. (Tr. 47) Holmes' highest level of education was some college she attended over the course of about 10 years in an unsuccessful attempt to become a nurse. (Tr. 48)

A licensed driver, Holmes drove to work five days a week. (Tr. 47) She stated that her daughter usually walked to and from school, but that Holmes would drive her on cold days. (Tr. 64) Holmes stated she took the train to downtown Cleveland because driving was difficult and parking was hard to find. (Tr. 48) Holmes paid her rent and bills on her own. (Tr. 49) Holmes stated that she stayed home most of the time and watched sitcoms or movies on TV or read books. (Tr. 63-64) She stated she had a lot of social anxiety and did not like to go out or be around very many people. (Tr. 63) Holmes stated she would go grocery shopping once a week or every other week for half an hour. (Tr. 65)

Holmes worked five days a week, for a total of twenty-five hours, answering phones, taking care of clients, and doing additional work for a State Farm insurance agent. (Tr. 50) She

started the job in September and reported having symptoms, including being emotional, crying at work, depression, forgetfulness, inability to concentrate or follow conversations or instructions, memory loss, and side effects from her medications.  (Tr. 51-52, 55)  Holmes stated she had been reprimanded "maybe a dozen" times for forgetting document conversions, missing meetings, forgetting conversations, making silly mistakes, and leaving early because she was "emotionally overwhelmed and crying a lot, and just kind of having panic attacks and things like that."  (Tr. 57-58)  Holmes stated that she only worked part time because she experienced "really terrible symptoms of the bipolar disorder that affected [her] ability to maintain more hours of employment."  (Tr. 51)  She stated that when working full time she would cut herself at her desk, overdose on medication due to anxiety, be depressed, not sleep, not get out of bed, cry a lot, be very emotional, irritable, and angry, have big mood swings, and miss a lot of work.  (*Id.*)  She testified that she was taking Lamictal, Seroquel, Artane, and Klonopin, which she took daily and managed herself.  (Tr. 55-56)  Although Holmes testified she experienced side effects such as memory loss from these medications, there was no mention of such side effects in her medical record.  (Tr. 56-57)  Holmes stated she experienced almost daily mood swings that interfered with her personal relationships and work, even while taking her medication.  (Tr. 68-70)

Holmes testified she worked at CSD Insurance as an insurance agent doing customer service and some sales.  (Tr. 52)  She stated she worked at Beacon Hill Staffing in 2014 as an analyst and software tester, but was let go for job performance.  (*Id.*)  She stated she worked for Ron Cillian Insurance Agency where she did insurance work, customer service, and sales.  (Tr. 52-53)  Holmes stated she worked at Marsh USA from 2009 to 2011 in an administrative position as a commercial broker, where she did all the paperwork for various accounts.  (Tr. 53)  She stated she worked at the insurance agency Timothy Greer and worked as a call center representative at Progressive RSC insurance company.  (*Id.*)

16

Holmes stated she stopped working at one of the jobs for medical reasons, including "an emotional breakdown," shortly after she was hospitalized for a suicide attempt. (Tr. 54) She stated her mental breakdown occurred in February 2015. (Tr. 55) She started working part time in November 2015 at Checks and Balances as an insurance agent. (Tr. 54)

Holmes testified she was hospitalized in January and February of 2016, because she had a "bad reaction" and became suicidal after her doctor took her off her antidepressant and after she was denied Social Security. (Tr. 58-59) She stated she "overdosed on pills." (Tr. 59) Holmes stated she was hospitalized in July 2016, because she was feeling hopeless, couldn't maintain her life, her parents couldn't maintain the financial assistance, and she felt she was better off dead. (*Id.*) Holmes stated her ex-husband took care of her daughter when she was hospitalized. (Tr. 60) She stated she had to attend several parent teacher conferences with her daughter, who was also struggling, seeing a counselor, and seeking psychiatric services. (*Id.*) Holmes testified that she had improved in general since her last suicide attempt, and that she found Latuda helped her the most. (Tr. 61-62) She also stated Latuda caused her pain in her joints and arthritic knees and may have caused her to lose or black out for "chunks of time." (Tr. 67-68)

### 2.    Vocational Expert Testimony

A vocational expert ("VE"), Dr. Joseph Thompson, also testified at the hearing. Because plaintiff raises no issue on appeal regarding the ALJ's handling of the opinions of the VE, it is unnecessary to summarize that testimony.

### III.    ALJ's Findings and Decision

The ALJ's February 1, 2017 decision contained the following findings relevant to this appeal:

1. Holmes met the insured status requirements of the Social Security Act through December 31, 2020. (Tr. 20);

3. Holmes has the following severe impairments: bipolar disorder and posttraumatic stress disorder (PTSD). (20 C.F.R. 404.1520(c)) (Tr. 21);

4.  Holmes does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).  (Tr. 22);

5.  After careful consideration of the entire record, the ALJ found that Holmes had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: understand, remember, and carry out simple instructions; perform simple, routine, and repetitive tasks but not at a production rate pace such as an assembly line; adapt to routine changes in the workplace that are infrequent and easily explained; and interact occasionally with supervisors and coworkers and the general public.  (Tr. 24);

10.  Considering Holmes' education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Holmes can perform (20 C.F.R. 404.1569 and 404.1569(a)).  (*Id.*);

Based on his eleven findings, the ALJ determined that Holmes was not disabled from October 15, 2014 through February 1, 2017, the date of his decision.  (Tr. 21)

## IV.  Law and Analysis

### A.  Standard of Review and Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(a).  Furthermore:

[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[2]....

---

[2] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. § 423 (d)(2)(A).

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow the five-step sequential analysis set out in agency regulations, which can be paraphrased as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's RFC and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and RFC, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140-142 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to produce evidence that establishes whether the claimant has the RFC and vocational factors to perform work available in the national economy.  *Id.*

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker,* 708 F.2d  1058, 1059 (6th Cir. 1983).  Substantial evidence has been

defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

The Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g) and 1383(c)(3). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter,* 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen,* 800 F.2d 535,545 (6th Cir. 1986); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 288, 389-90 (6th Cir. 1999); *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen,* 800 F.2d at 545 (*citing Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984).

The court must also determine whether the Commissioner applied proper legal standards; if not, reversal is required, unless the error of law was harmless. *See, e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."). Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [when] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); *accord Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich.

Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

### B.    Listing 12.04

Holmes argues her condition meets or medically equals the criteria of Listing 12.04.  ECF Doc. 13, Page ID# 746.  The commissioner counters that the ALJ squarely addressed listing 12.04 and correctly applied the revised listing criteria in concluding Holmes' condition did not meet or medically equal the Listing.  ECF Doc. 16, Page ID# 766.  The commissioner argues Holmes' "attempt to reweigh the evidence the ALJ considered in evaluating the B and C criteria is unavailing."  *Id*. at 767.

At Step Three in the disability evaluation process, a claimant will be found disabled if her impairment meets or equals one of the Listing of Impairments.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec*., 381 F. App'x 488, 491 (6th Cir. 2010).  The Listing of Impairments "describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity."  20 C.F.R. § 404.1525.  A claimant must point to specific evidence that demonstrates that her impairment reasonably could meet or equal every requirement of a Listing before the Commissioner may conclude that he or she is disabled at Step Three.  *See* 20 C.F.R. § 404.1520; *see also Smith-Johnson v. Comm'r of Soc. Sec*., 579 F. App'x 426, 432 (6th Cir. 2014).  The claimant has the burden to prove that all of the elements are satisfied.  *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).  The court may look to the ALJ's decision in its entirety to justify the ALJ's Step Three analysis.  *See Snoke v. Astrue*, 10-cv-1178, 2012 U.S. Dist. LEXIS 21930, 2012 WL

568986, at *6 (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)).  It is not sufficient to come close to meeting the conditions of a Listing.  *See, e.g., Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir.1989) (Commissioner's decision affirmed where medical evidence "almost establishes a disability" under Listing).

To meet Listing 12.04, which provides for a finding of disability when a claimant suffers from depressive, bipolar, and related disorders, a plaintiff must satisfy the requirements in paragraphs A and B or satisfy the requirements in paragraphs A and C.  *See* 20 C.F.R. Pt. 404, App'x 1, § 12.04.

The ALJ did not explicitly address whether Holmes' impairment met or equaled the criteria in paragraph A of Listing 12.04.  In relevant part, paragraph A of Listing 12.04 requires medical documentation of depressive disorder, characterized by five or more of the following: depressed mood; diminished interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; observable psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; or thoughts of death or suicide.  *See* 20 C.F.R. Pt. 404, App'x 1, § 12.04(A).  Holmes argues "the medical record documents anhedonia, sleep disturbances, decreased concentration, suicidal ideation, depressed mood, and feelings of hopelessness."  ECF Doc. 13, Page ID 747-48 (citing Tr. 366, 373, 435, 440, 447, 448, 450, 453, 546, 570).  The ALJ noted that Holmes reported having symptoms, such as anxiety, mood swings, irritability, depression, and suicidal ideation.  (Tr. 26, 435-46)  I agree with Holmes that there is substantial evidence in the record indicating that her impairments met or medically equaled the A criteria of Listing 12.04.  The commissioner has asserted no argument to the contrary.

The ALJ found that Holmes' impairment did not satisfy the paragraph B or paragraph C criteria of Listing 12.04.  (Tr. 21-24)  To meet paragraph B, a mental impairment must result in

an extreme limitation of one, or marked limitations of two of the following: the ability to (i)

understand, remember, or apply information; (ii) interact with others; (iii) concentrate, persist, or

maintain pace; or (iv), adapt or manage oneself.  The ALJ found Holmes had moderate

limitations in understanding, remembering, or applying information, interacting with others, and

concentrating, persisting or maintaining pace and only mild limitations in adapting or managing

herself.  (Tr. 22-23)  Holmes argues the ALJ erred because "the record and testimony prove she

has marked limitations in interacting and relating to others, and in attending to and completing

tasks."  She has not challenged the ALJ's conclusions regarding her other abilities.  ECF Doc.

13, Page ID# 748.

> With regard to Holmes' ability to interact with others, the ALJ found the following.
>
> Here, the claimant reported that she has some difficulty interacting with others and that it causes her to have increased anxiety.  (8E and by testimony).  In fact, she reported to her treating clinician she was having increased difficulty at a specific job due to the requirement to interact with others regularly.  ([Tr. 595]).  Yet, the claimant also reported she is currently working on a part-time basis in an office with 3 other individuals, she interacts with a boyfriend, [and] she attends meetings at her daughter's school, shops, and attends appointments.  ([B]y testimony).  For these reasons, the claimant's ability to function independently, appropriately, and effectively, on a sustained basis, is fair in this area.

(Tr. 23)  Holmes argues the ALJ failed to consider that Holmes only saw her mother and

boyfriend once a week and that Holmes had frequent conflicts with her boyfriend.  ECF Doc. 13,

Page ID# 748 (citing Tr. 65).  However, the ALJ explicitly noted that Holmes had weekly

contact with her mother and was currently dating someone that she saw approximately once per

week.  (Tr. 25, 65)  Holmes argues that the ALJ did not consider that Holmes' "mood swings

adversely affect[ed] the relationship with her boyfriend and likely was the cause of her previous

failed marriage."  ECF Doc. 13, Page ID# 748.  But the ALJ noted that after a period of sporadic

medication compliance, Holmes reported she had a significant fight with her husband and had

difficulty with mood stability.  (Tr. 27 (citing Tr. 589))  Holmes argues the ALJ "did not

consider that [she] has significant social anxiety and no friends." ECF Doc. 13, Page ID# 748. However, the ALJ noted that Holmes reported she had difficulty interacting with others and that it caused her anxiety, as quoted above. (Tr. 23) Holmes also argues the ALJ did not consider that she has trouble getting along at the office with her three co-workers as well as customers or her statements to treating sources that she was having difficulty at her job because of the requirement to interact with others regularly. ECF Doc. 13, Page ID# 748 (citing Tr. 595). However, the ALJ noted that Holmes reported to her treating clinician she was having increased difficulty at a specific job due to the requirement to interact with others regularly. (Tr. 23 (citing Tr. 595)). In sum, Holmes' arguments lack merit because the ALJ's decision reflects his thorough review and analysis of the record, including the very issues Holmes claims the ALJ did not consider.

Holmes' argument that the ALJ did not consider Nurse Pardon's opinions also lacks merit. The ALJ stated that Nurse Pardon noted that Holmes "is easily distracted and is irritable and anxious when in social/public situations and she would not be able to handle pressures at work or elsewhere." (Tr. 28-29, 546) The ALJ accorded Nurse Pardon's assessment partial weight and noted that "the record supports [Holmes] has maintained at least part-time employment throughout much of the adjudicated period and she has been able to social interact in stores, develop a new dating relationship, and attend school related conferences for her daughter." (Tr. 23, 52-54) The ALJ also noted "that as a nurse, Ms. Pardon is not considered to be an 'acceptable medical source' for purposes of generating a medical opinion in this matter (SSR 06-03p)." (Tr. 29)

Holmes also argues that the evidence showed her ability to concentrate, persist, and maintain pace are markedly impaired. ECF Doc. 13, Page ID# 748. The ALJ found Holmes only had moderate limitation in this area. (Tr. 23) The ALJ stated:

> Here, the claimant reported that she has difficulty with maintaining focus and
> attention at work and with regard to activities at home.  (8E and by testimony).
> She explained that she is often distracted and has a difficult time completing
> tasks.  (Id.).  Yet, she has been able to maintain at least part-time employment, she
> is able to drive, shop, and perform other household chores independently, she is
> the primary care giver for her daughter, and she is able to maintain sufficient
> attention to watch TV and to assist her daughter with her homework.  (Id.).  For
> these reasons, the claimant's ability to function independently, appropriately, and
> effectively, on a sustained basis, is fair in this area.

(*Id*.)  Holmes argues that the ALJ was selective in his analysis, because he did "not consider

Nurse Pardon reported that Plaintiff experiences many difficulties in daily living, including

difficulty with daily chores, shopping, and driving, and decreased concentration."  ECF Doc. 13,

Page ID# 749 (citing Tr. 549).  However, the ALJ noted that "[o]n February 5, 2016, Ms. Pardon

completed an activities of daily living worksheet and provided a statement indicating that the

claimant reported difficulties in many areas, including difficulty with daily chores, shopping and

driving, and further noted that the claimant reported problems related to decreased concentration.

(Tr. 28 (citing Tr. 549))  Holmes argues the ALJ did not consider Nurse Pardon's opinion that

"Holmes is unable to sustain her attention particularly during manic episodes and that Plaintiff

has difficulty with focus, with concentration and with staying on tasks."  ECF Doc. 13, Page ID#

749 (citing Tr. 270).  However, the ALJ noted that "on February, 25, 2016,[3] Ms. Pardon

completed a form and noted that claimant has a poor short-term memory, which affects her

ability to follow directions and function productively; she has problems completing tasks and

maintaining attention; and she is unable to sustain attention especially during manic episodes."

(Tr. 28 (citing Tr. 546))  Contrary to Holmes' assertions, the ALJ thoroughly considered Nurse

Pardon's opinions.  (Tr. 28-29)  He found Nurse Pardon's statements to be "vague in nature and

not clearly defined."  (Tr. 29)  The ALJ gave Nurse Pardon's statements regarding Holmes' daily

---

[3] The ALJ stated that Nurse Pardon completed a form on February 25, 2016, however, the record
indicates Nurse Pardon completed the mental status questionnaire on February 5, 2016.

activities "little weight," because the statements were based on Holmes' subjective allegations. (*Id.*) The ALJ found that Holmes' subjective allegations were not fully consistent with the entire medical record, because he found the record did not corroborate Holmes' allegations of symptom severity and the record had multiple conflicting statements regarding the severity of Holmes' activities of daily living. (Tr. 26, 30) Holmes has not challenged the ALJ's finding regarding her allegations and statements about the severity of her symptoms.

Here, as the commissioner correctly notes, Holmes has not identified any evidence that the ALJ did not discuss in his Step Three and RFC analysis. The ALJ found that Holmes had moderate limitation in interacting with others, but was still able to function independently, appropriately, and effectively on a sustained basis. (Tr. 22-23)

Holmes also argues that the ALJ erred in his analysis regarding the criteria in paragraph C of Listing 12.04. ECF Doc. 13, Page ID# 749. The commissioner counters that the ALJ discussed, throughout his decision, the evidence concerning Holmes' bipolar disorder, PTSD-related symptoms and treatment, and "found that the evidence demonstrated, *inter alia*, that she remained able to work at least part-time for much of the claimed period of disability, including 25 hours per week [at] the time of the hearing, while raising a 9-year-old daughter over whom she had primary custody, and performing a range of daily activities." ECF Doc. 16, Page ID# 773 (citing Tr. 22-23, 25-31).

To meet paragraph C, a plaintiff's mental disorder must be "serious and persistent," that is, the plaintiff has a medically documented history of the existence of the disorder over a period of at least two years. *See* 20 C.F.R. Pt. 404, App'x 1, § 12.04(C). There must also be evidence of both: (1) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental

disorder; and (2) marginal adjustment, or minimal capacity to adapt to changes in the

environment or to demands that are not already part of a plaintiff's daily life.  *Id.*

With regard to the paragraph C criteria, the ALJ stated:

[T]he criteria of 12.04 and 12.15 are not met because the record does not show
that the claimant has a medically documented history of the existence of a serious
and persistent mental disorder over a period of at least 2 years, and there is not
evidence of both of the following: 1) medical treatment, mental health therapy,
psychosocial support(s), or highly structured settings that is ongoing and that
diminishes symptoms or signs of the mental disorder AND 2) a marginal
adjustment, that is, evidence of a minimal capacity to adapt to changes in the
environment or to demands that are not already a part of daily life.

(Tr. 24)  Holmes also argues that the ALJ erred in his analysis regarding the criteria in paragraph

C of Listing 12.04, because "he fail[ed] to provide a sufficient explanation as to why [Holmes']

condition does not satisfy the 'C' criteria."  ECF Doc. 13, Page ID# 749.  Holmes also argues

that she has minimal capacity to adapt to changes or demands that are not already part of her life,

because she "had three suicide attempts throughout this period of time particularly when she

[wa]s feeling stressed or overwhelmed."  *Id.* at 750.

The ALJ found Holmes had the severe impairment of bipolar disorder.  (Tr. 21)  The ALJ

found that throughout the adjudicated period Holmes participated in ongoing outpatient mental

health treatment and sporadically participated in counseling or support groups.  (Tr. 26, 420-45,

500-513, 560-616, 647-669)  The ALJ noted that Holmes' medications were adjusted during

periods of increased symptoms and, at times, Holmes was noted to have had some significant

improvement.  (Tr. 26-28, 425-26, 425, 430-33, 479, 560-67, 581-82, 601, 604)  However, the

ALJ also noted that on multiple occasions Holmes decided on her own to stop taking prescribed

medications or for other reasons went multiple days without medication, sometimes due to

having missed appointments or failed to resume taking her medications after being discharged

from the hospital.  (Tr. 27, 415, 593, 599, 601-605, 666-669)  The ALJ noted that "[a]lthough the

record supports that [Holmes] had increased symptoms at several points during the adjudicated

period, which led to suicidal ideation or attempts and inpatient hospitalizations, the immediate

periods prior to the increase in symptoms was often noted to follow a period with noncompliance

in medications, great outside life stressors (custody battle/divorce and contact with past abusive

partner." (Tr. 30, 364, 369-70, 420, 532, 635, 666-669)  The ALJ also noted that on one

occasion, Holmes was admitted to the hospital following a period in which she was admittedly

drinking alcohol while medicated.  (Tr. 30, 420)  Also, Dr. Mahboob Ahmed diagnosed Holmes

with "rule out malingering" after her emergency department treatment at Mercy Regional

Medical Center in January 2016.  (Tr. 533)  The ALJ noted that when Holmes "was compliant

with medications and not experiencing significant life stressors, she was noted to have much

improved symptoms, with GAF scores consistently noted to be in the moderate to mild range."

(Tr. 30, 430-33, 647-60).  Holmes has not argued that her periods of inconsistent treatment or

lack of compliance were a feature of her mental disorder.  *See* 20 C.F.R. Pt. 404, App'x 1, §

12.00(G)(2)(b) ("We will consider periods of inconsistent treatment or lack of compliance with

treatment that may result from your mental disorder.").

Holmes again cites to the opinions of Nurse Pardon to support her argument that her

disorder meets the criteria in paragraph C of Listing 12.04.  The Court should reject this

argument for the same reasons discussed above in regard to the ALJ's analysis of Nurse Pardon's

opinions.

The state agency psychological consultants, Drs. Tangeman and Dr. Waggoner, both

opined that Holmes' mental impairments did not satisfy the criteria of paragraphs A, B, or C of

Listing 12.04.  (Tr. 84-85, 102)  They opined Holmes only had moderate difficulties in

maintaining social functioning and concentration, persistence, or pace.  (Tr. 84, 102)  The ALJ

gave significant weight to Dr. Tangeman's and Dr. Waggoner's opinions.  (Tr. 29)  Agency

regulations provide that state agency reviewing sources are highly skilled medical professionals

who are experts in Social Security issues.  *See* 20 C.F.R. § 416.927.  This provided substantial evidence to discount the conflicting opinions of unacceptable source, Nurse Pardon.

Substantial evidence supports the ALJ's finding that Holmes' mental impairment did not meet or medically equal the requirements in Listing 12.04 paragraphs B and C.  I recommend the Court should affirm the ALJ's finding on this issue.

## V.  Recommendation

Because the ALJ's finding that Plaintiff's mental impairment did not satisfy the paragraph B and C criteria of Listing 12.04 was supported by substantial evidence, I recommend that the final decision of the Commissioner be AFFIRMED, pursuant to 42 U.S.C. §405(g).

Dated: June 11, 2018

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).